UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMON EDWARD JACKSON,<br><br>                Plaintiff,<br><br>   vs.<br><br>A. K. SCRIBNER, Warden,<br><br>                Defendant. | No. 2:03-cv-01275-JKS<br><br>MEMORANDUM DECISION |

       Petitioner Lamon Edward Jackson has filed a petition for habeas corpus under 28 U.S.C. § 2254. Petitioner is currently serving a term of life with possibility of parole plus 25 years in the custody of the California Department of Corrections and Rehabilitation at the California State Prison, Corcoran, California.

       Petitioner was convicted after a trial by jury of attempted murder, assault with a firearm, and discharging a firearm. The jury also found as true that Petitioner personally used a firearm while committing the crimes. Petitioner timely appealed his conviction to the California Court of Appeals, which affirmed his conviction in an unpublished written opinion. Petitioner's petition for review by the California Supreme Court was summarily denied without opinion on May 16, 2001. Petitioner did not file a petition for *certiorari* with the U.S. Supreme Court and his conviction became final 90 days later, August 15, 2001. *See Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir.2001).

       On August 1, 2001,[1/] Petitioner, appearing *pro se*, filed two petitions for a writ on habeas corpus in the California Supreme Court, both of which were summarily denied January 29, 2002,

---

[1/] The petitions bear filing date stamps of August 6, but show that they were signed and presumptively handed to prison authorities for delivery on August 1. California follows the "prison delivery" rule, *i.e.*, that a document is deemed filed when delivered to prison officials for mailing. *See In re Jordan*, 840 P.2d 983, 985 (Cal.1992) (holding that the "prison delivery" rule applies in California). Accordingly, in the absence of evidence to the contrary the Court assumes the filing to be the date it was signed.

citing *In re Swain* (1949) 34 Cal.2d 300, 304.  On March 13, 2002,[2/] Petitioner filed a third *pro se* petition for a writ of habeas corpus in the California Supreme Court, which was also summarily denied October 2, 2002, citing *In re Clark* (1993) 5 Cal.4th 750 and *In re Waltreus* (1965) 62 Cal.2d 218.   On July 5, 2002,[3/] while his third petition was pending before the California Supreme Court, Petitioner filed a *pro se* petition for a writ of habeas corpus in the California Superior Court, Sacramento County, which was denied in a written opinion August 12, 2002.  On October 3, 2002,[4/] Petitioner filed a *pro se* petition for a writ of habeas corpus in the California Court of Appeal, which was summarily denied without opinion on October 17, 2002.  On October 29, 2002,[5/] Petitioner filed his fourth *pro se* petition for a writ of habeas corpus in the California Supreme Court, which was denied March 26, 2003, citing *In re Clark* (1993) 5 Cal.4th 750.  Petitioner filed his petition for a writ of habeas corpus under § 2254 in this Court on May 21, 2003.

The history of this case and the facts are well known to the parties and are set forth in the opinion of the California Court of Appeal.  In the interests of brevity they are not repeated here.

Petitioner raises eight grounds for relief.  Ground 1: CALJIC 17.41.1 intrudes on the jury's decision making process, infringes on Petitioner's right to the independent judgment of each juror and jury nullification.  Ground 2: the CALJIC 2.90 definition of reasonable doubt violates Petitioner's right to due process.  Ground 3: the jury panel, which did not contain a single member who was of African-American descent, did not represent a cross-section of the community at large thereby depriving Petitioner of his right to due process.  Ground 4: the

---

[2/] The petition bears a filing date stamp of March 18, but shows that it was signed and presumptively handed to prison officials for delivery on March 13.  In the absence of evidence to the contrary the Court assumes the filing to be the date it was signed. See Note 1.

[3/] The petition bears a filing date stamp of July 15, but shows that it was signed and presumptively handed to prison officials for delivery on July 5.  In the absence of evidence to the contrary the Court assumes the filing to be the date it was signed. See Note 1.

[4/] The petition bears a filing stamp date of October 9, but shows that it was signed and presumptively handed to prison officials for delivery on October 3.  In the absence of evidence to the contrary the Court  assumes the filing date to be the date signed. See Note 1.

[5/] The petition bears a filing stamp date of November 1, but shows that it was signed and presumptively handed to prison officials for delivery on October 29.  In the absence of evidence to the contrary the Court  assumes the filing date to be the date signed. See Note 1.

prosecution introduced testimony of three witness that was either false, contradictory, or misleading, and should have been disregarded as a matter of law.  Ground 5: references to the prosecution as "the People" in jury instructions and elsewhere throughout the trial is constitutionally impermissible.  Ground 6: Insufficiency of the evidence to convict Petitioner of attempted premeditated murder.  Ground 7: Petitioner was inappropriately charged with attempted premeditated murder rendering his trial on that charge illegal.  Ground 8: Ineffective assistance of appellate counsel for failure to raise points on appeal, abandoning Petitioner on appeal, and refusal to prepare a petition for writ of habeas corpus.

In his direct appeal Petitioner raised the issues presented in Grounds 1 (CALJIC 17.41.1), 2 (CALJIC 2.90) and 5 ("the People") in his petition before this Court.  In his first and second petitions for habeas corpus to the California Supreme Court Petitioner raised Grounds 3 (improper jury composition) and 4 (false, contradictory, misleading testimony).  In his third petition for habeas corpus to the California Supreme Court he raised Ground 5 ("the People"). In his petition for a writ of habeas corpus to the California Superior Court, the California Court of Appeal, and his fourth petition to the California Supreme Court Petitioner raised Grounds 6 (insufficiency of the evidence), 7 (erroneous charge of attempted premeditated murder), and 8 (ineffective assistance of counsel).

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decisions of the California Court of Appeal on direct appeal or the California Superior Court, Court of Appeal, and Supreme Court on his post-conviction petitions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the California Court of Appeal on direct appeal and the California Superior

Court, Sacramento County, on the state petitions for habeas corpus.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir.2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir.2005) (per curiam).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief.  This Court may only address violations of federal law.  28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted)).

Ground 1 (CALJIC 17.41.1).  The jury was instructed:[6]

The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions.  Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on [penalty or punishment, or] any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

Petitioner contends that this instruction infringes on a jury's right to nullify, undermines the independence of jurors, injects the court into the deliberative process of the jury, and implicates the secrecy and sanctity of jury deliberations.

Petitioner's arguments are foreclosed by the decision of the Ninth Circuit in *Brewer v. Hall*, 378 F.3d 952–56 (9th Cir.2004) (holding that CALJIC 17.41.1 is not unconstitutional); a decision by which this Court is bound, *see Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir.2003) (en banc).   Petitioner is not entitled to relief on his first ground.

---

[6] The Court notes, as did the California Court of Appeal, that the record is not entirely clear the jury was given the challenged instruction.  As did the California Court of Appeal, because the respondent does not challenge the assertion of Petitioner, this Court presumes the challenged instruction was given.

MEMORANDUM DECISION
*Jackson v. Scribner*, 2:03-cv-01275-JKS               4

Ground 2 (CALJIC 2.90). The jury was instructed:

> A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in a case of reasonable doubt whether [his] [her] guilt is satisfactorily shown, [he] [she] is entitled to a verdict of not guilty. This presumption places on the People the burden of proving [him] [her] guilty beyond a reasonable doubt.
>
> Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is the state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

Petitioner argues that notwithstanding the fact that the California courts have historically and unanimously upheld the validity of CALJIC 2.90, until the U.S. Supreme does it is not settled. Unfortunately for Petitioner, the U.S. Supreme Court has upheld the constitutionality of CALJIC 2.90. *Victor v. Nebraska*, 511 U.S. 1, 11-17 (1994).[7] Petitioner is not entitled to relief on his second ground.

Ground 3 (improper jury composition). Petitioner presented this ground in his first two petitions for post-conviction habeas relief filed in the California Supreme Court.[8] That court denied relief without an opinion on the merits citing *In re Swain* (1949) 34 Cal.2d 300, 304.[9] The citation to *Swain* is not a ruling on the merits, but is a denial without prejudice to the filing of a new petition that meets the requirements that the facts that entitle him to relief be more fully

---

[7] Consolidated with *Sandoval v. California*. The Supreme Court affirmed the decision of the California Supreme Court, 841 P.2d 862, that the language of CALJIC 2.90 did not violate the Due Process Clause of the U.S. Constitution.

[8] Respondent in his Answer incorrectly states that this claim was presented to the California Court of Appeal on Petitioner's direct appeal.

[9] The California Supreme Court held in the cited page of *Swain*:
[O]ur determination that the vague, conclusionary allegations of the present petition are insufficient to warrant the issuance of a writ is not a ruling on the merits of the issues which petitioner has attempted to raise (citations omitted). We are entitled to and we do require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned and that he fully disclose his reasons for delaying in the presentation of those facts. This procedural requirement does not place upon an indigent prisoner who seeks to raise questions of the denial of fundamental rights in propria persona any burden of complying with technicalities; it simply demands of him a measure of frankness in disclosing his factual situation.

elucidated and disclose the petitioner's reasons for delay.  *See Gaston v. Palmer*, 417 F.3d 1030, 1036–39 (9th Cir.2005).  Petitioner did not further pursue this claim in the California courts.

There having been no ruling on the merits, the AEDPA § 2254(d) standard of review does not apply.  *Barker v. Fleming*, 423 F.3d 1085, 1092 (9th Cir.2005).  Consequently, this court must, of necessity, review the issue raised *de novo*.[10]

In his verified petition Petitioner, an African-American, asserts that of the 40 members of the jury venire called to the trial department for his trial, not one was an African-American.  Consequently, Petitioner was tried by a jury whose racial composition excluded members of his race.  Petitioner further contends that there is an overarching racial bias prevalent in Sacramento County, from which it is presumed the jury venire was drawn.  Although it is not entirely clear from the petition, Petitioner seems to be alleging that there are no African-Americans included in the entire jury pool.

The Supreme Court established in *Duren v. Missouri*, 439 U.S. 357, 363–64 (1979), that juries do not represent a fair cross-section of the community when the jury selection process systematically excludes a distinctive group of the jury-eligible population.

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Respondent agrees that in this case African-Americans are a distinctive group, satisfying the first prong of the *Duren* test.  It is with the second and third prongs that the problem arises and on which Petitioner has introduced no evidence, only unsupported conclusory allegations.

"The second prong of the *Duren* test requires proof, typically statistical data, that the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community. We have been confronted with this issue before and have favored the

---

[10] The Court notes that the denial of the petition was without prejudice to Petitioner refiling a proper petition raises a serious question whether Petitioner has properly exhausted his remedies in the state courts with respect to this ground.  However, since Respondent has admitted exhaustion of state court remedies, the Court need not reach or decide that point.

'absolute disparity' test for measuring the representativeness of a distinctive group in a jury pool." *United States v. Esquivel*, 88 F.3d 722, 726 (9th Cir.1996) (internal citation omitted). To establish underrepresentation the ultimate comparison is the actual percentage of jury-eligible members of the allegedly underrepresented group in the area from which the jury venire is drawn. *United States v. Artero*, 121 F.3d 1256, 1261 (9th Cir.1997).[11/] Petitioner has not alleged that such supporting statistical data exists, let alone introduced such statistical data.

Even if Petitioner could show that the jury venire underrepresents African-Americans, that is, without more, insufficient to show systematic exclusion under the third prong of the *Duren* test. If underrepresentation by itself were sufficient to support a holding of unconstitutionality, the second and third prong of *Duren* would effectively collapse into one inquiry. To satisfy *Duren's* third prong Petitioner must present evidence that the underrepresentation of African-Americans is due to the system Sacramento County uses to assemble the venire. *Randolph v. People of the State of California*, 380 F.3d 1133, 1141–42 (9th Cir. 2004). This the Petitioner has not done.

While the Court could appoint counsel, authorize the retention of experts to give Petitioner an opportunity to develop the necessary evidence, and hold an evidentiary hearing, it would be a futile exercise. As Respondent points out, given the results of a similar proceeding in this Court four years ago, it is unlikely that Petitioner could establish that either of the second or third prongs of the Duren test were satisfied. *See United States v. Luong*, 255 F.Supp.2d 1123, 1127–28 (E.D.Cal.2003) (finding that jury-eligible African-Americans totaled 6.5% of the jury-eligible population in this district, which includes Sacramento County, and no evidence of systematic exclusion).

Petitioner is not entitled to relief under the third ground.

---

[11/] The Court recognizes that in a later decision a panel of the Ninth Circuit, recognizing its holding adopting a lesser standard, *i.e.*, the entire population base, was in conflict with *Artero* simply dismissed *Artero* as incorrectly decided. *United States v. Rodriquez-Lara*, 421 F.3d 932, 942–43 (9th Cir.2005). Be that as it may, this Court believes that when it is faced with potentially conflicting controlling decisions of the Ninth Circuit, it should follow the first. *See United States v. Magana,* 797 F.2d 777, 779 (9th Cir.1986); *United States v. Maybusher,* 735 F.2d 366, 371 n. 1 (9th Cir.1984).

<u>Ground 4 (introduction of false, contradictory, or misleading testimony)</u>.   As with his third ground, Petitioner presented this ground solely in his first two petitions for post-conviction habeas relief filed in the California Supreme Court.[12/]  For the same reasons as applied to the third ground, the Court addresses the fourth ground *de novo*.[13/]

Petitioner alleges that the prosecutor introduced false testimony denying him due process. Petitioner contends that because of substantial inconsistences among the testimonies of three prosecution witnesses, Karrie Harris, Nyanza Dean, and Gerald Bean, the testimony was inherently improbable and its falsity apparent; therefore, according to Petitioner, the testimony of all three must be disregarded as a matter of law.

There is no allegation, let alone any evidence, that the prosecutor in this case knowingly used false or perjured testimony, the essential elements of prosecutorial misconduct.  *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir.2001). While Petitioner highlights several areas in which the testimony of one witness appears to contradict that of another, that standing alone is insufficient.  *See United States v. Zuno-Arce,* 44 F.3d 1420, 1423 (9th Cir.1995) (refusing to reverse where defendant "offered no evidence whatsoever for prosecutorial misconduct except for the inference from discrepancies"); *United States v. Wolf,* 813 F.2d 970, 976-77 (9th Cir.1987) (discrepancies in witness testimony, subject to cross-examination, did not constitute grounds for reversal).  Nor does the fact that the prosecution presented witnesses with contradictory stories of the details of the incident necessarily lead to the conclusion that the prosecutor knowingly introduced false or perjurious testimony absent evidence that the prosecutor knew which story was false.  *United States v. Sherlock*, 962 F.2d 1349 (9th Cir.1989).

The contradictory testimony that Petitioner refers to deals with who was driving a car at a particular time, whether or not one of them exited the car after the shooting, and a difference in the description of the exchange of a handgun between the Petitioner and his sister, including what was or was not heard.  What Petitioner ignores is the fact that although there is a difference

---

[12/] Respondent incorrectly argues that the California Supreme Court denied these petitions on the merits.  See Note 7 and the accompanying text.

[13/] Also see Note 10.

MEMORANDUM DECISION
*Jackson v. Scribner*, 2:03-cv-01275-JKS                            8

in the precise details, the testimony of all three agreed that (1) Petitioner received the gun from his sister (whether it appeared to the witness that he took it or she passed it to him differs) and (2) after obtaining possession of the gun, Petitioner shot in the direction of Gerald Bean.  Finally, counsel for Petitioner in closing argument hammered hard on credibility of the three prosecution witnesses, particularly the inconsistencies in their testimony concerning what happened and who did what preceding and following the incident for which Petitioner was charged.

> The jury in this case was instructed using CALJIC 2.21.1.
>
> Discrepancies in a witness's testimony or between a witness's testimony and that of other witnesses, if there were any, do not necessarily mean that [any] [a] witness should be discredited. Failure of recollection is common. Innocent misrecollection is not uncommon. Two persons witnessing an incident or a transaction often will see or hear it differently. Whether a discrepancy relates to an important matter or only to something trivial should be considered by you.

The jury was also instructed using CALJIC 2.21.2:

> A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars.

Petitioner does not challenge the use of these instructions and the Court assumes that the jury followed its instructions. *See Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions").  The jury, having been properly instructed on the standards for judging the credibility of witnesses, could have accepted or rejected the testimony of one or more of the three, and still have accepted the testimony of the three as to the essential facts—Petitioner obtained a gun from his sister and shot at Gerald Bean.

Petitioner has failed to establish either that: (1) the testimony of Karrie Harris, Nyanza Dean, and Gerald Bean was false or perjurious; or (2), even if it were, the prosecutor knew which of the three was not telling the truth.  Petitioner is not entitled to relief on his fourth ground.

Ground 5 (use of the term "the People").  Petitioner raised this issue in his direct appeal and in his third petition for a writ of habeas corpus filed with the California Supreme Court.

Petitioner argues that use of the term "the People" for the prosecution denied him due process and a fair trial. The California Court of Appeal dismissed his arguments as "frivolous." There is no controlling Supreme Court precedent that the use of the term "the People" in reference to the prosecutor of a criminal offense violates any constitutional provision. Consequently, it can not be said that the decision of the California Court of Appeal was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d). *Kane v. Garcia Espitia*, 546 U.S. 9 (2005) (per curiam). Petitioner is not entitled to relief under his fifth ground.

Ground 6 (insufficiency of the evidence) and Ground 7 (improper charge of attempted premeditated murder). Petitioner presented these issues in his petitions for a writ of habeas corpus to the Sacramento Superior Court, the California Court of Appeal, and the California Supreme Court in his fourth petition filed with that Court.

In his sixth ground Petitioner argues that there is no evidence to support a finding as to the existence of elements of the crime of which he was convicted, attempted premeditated murder. Specifically, Petitioner argues there is no evidence to support a finding that he possessed any malice aforethought or specific intent to kill anyone. In his seventh ground, a corollary to the sixth, he argues that since there was insufficient evidence to support the crime it was improper and illegal for him to be charged with attempted premeditated murder.

The Sacramento Superior Court denied his petition without reaching the merits holding that these issues could have been brought up on direct appeal but were not, citing *In re Harris* (1993) 5 Cal.4th 813, 829; *In re Dixon* (1953) 41 Cal.2d 756, 759; and *In re Waltreus* (1965) 62 Cal.2d 318, 225. The California Court of Appeal denied the petition presented to it without opinion or citation. The California Supreme Court denied the petition present to it without opinion citing *In re Clark* (1993) 5 Cal.4th 750.[14/] There being no reasoned decision of the state court on the issues, this Court must assume that the state court decided them and perform an

---

[14/] Respondent has not raised procedural default as a defense in this case; therefore, the Court does not consider that issue. *See King v Lamarque*, 464 F.3d 963, 966-67 (9th Cir.2006); *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir.2003).

independent review of the record to ascertain whether the state court decision was objectively unreasonable. *Reynoso v. Giurbino, supra*; *Pham v. Terhune, supra*.

The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). This court must, therefore, determine whether the assumed decisions by the California courts on the merits unreasonably applied *Jackson*. The prosecution provided eyewitness testimony sufficient to establish that Petitioner shot at a person. Petitioner does not challenge this aspect of the verdict. Petitioner's claim is directed at a single element, that it was premeditated.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n. 16. This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir.2005).

Petitioner argues:

> In sum, the record is absolutely devoid of any evidence, whether direct or implied, that Petitioner possessed any malice aforethought or specific intent to attempt to kill anyone and most assuredly fails to establish that Petitioner formed a determined thought process weighing the considerations for and against his proposed course of action significantly prior to the time of the alleged incident as required to sustain his conviction. Specific intent to kill is a necessary element of attempted murder and cannot be inferred merely from the commission of another dangerous crime. Therefore, Petitioner's conviction must be reversed.

The jury was instructed using CALJIC 8.67:

> It is also alleged [in Count[s]  1  ] that the crime attempted was willful, deliberate, and premeditated murder. If you find the defendant guilty of attempted murder, you must determine whether this allegation is true or not true.
>
> "Willful" means intentional. "Deliberate" means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for

and against the proposed course of action. "Premeditated" means considered beforehand.

If you find that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder.

The law does not undertake to measure in units of time the length of the period during which the thought must be pondered before it can ripen into an intent to kill which is truly deliberate and premeditated. The time will vary with different individuals and under varying circumstances.

The true test is not the duration of time, but rather the extent of the reflection. A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation.

To constitute willful, deliberate, and premeditated attempted murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being.

The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.

You will include a special finding on that question in your verdict, using a form that will be supplied for that purpose.

It is clear that under California law premeditation and deliberation may be shown by circumstantial evidence and may evolve from a relatively short period of consideration by the defendant as to the course of action he should follow. *People v. Robillard*, 358 P.2d 295, 299 (Cal.1960), *overruled on other grounds, People v. Morse*, 388 P.2d 33, 44 (Cal.1964). The type of evidence the California Supreme Court has found sufficient to sustain a finding of premeditation and deliberation falls into three basic categories: (1) facts about how and what defendant did prior to the actual killing that show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing (planning activity); (2) facts about the defendant's prior relationship and/or conduct with the victim from which the jury could reasonably infer a motive to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of a pre-existing reflection and careful thought and weighing of considerations rather than mere

unconsidered or rash impulse hastily executed; and (3) facts about the nature of the killing from which the jury could infer that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design to take his victim's life in a particular way for a reason the jury can reasonably infer from facts of type (1) or (2). The California Supreme Court sustains verdicts of first degree murder typically when there is evidence of all three types and otherwise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3). *People v. Anderson*, 447 P.2d 942, 949 (Cal.1968). These categories are neither the *sine qua non* for premeditation nor exhaustive, and a reviewing court need not accord them any particular weight. *People v. Sanchez*, 906 P.2d 1129, 1148–49 (Cal.1995). Moreover, the process of premeditation and deliberation does not require any extended period of time; "thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." *People v. Hughes*, 39 P.3d 432, 465–66 (Cal.2002).

CALJIC 8.67 admonished the jury that the prosecutor had the burden of proving the allegations of premeditated murder true and if they had any reasonable doubt they must find them not true. As noted above, the Court assumes that the jury followed its instructions. *See Richardson v. Marsh, supra*. In the case at bar, there was testimonial evidence that Petitioner was angry with Dean because Dean had called him a "bitch" and that there had been an argument between Petitioner and Dean immediately preceding the shooting. From this, as Respondent argues, the jury could have inferred the existence of motive. There was also testimony that Dean was attempting to return to the car after the verbal altercation between Petitioner and Dean and that Petitioner went to a third person (his sister) to obtain the gun used to shoot at Dean. There is also testimony that when Petitioner fired the gun it was aimed at Dean and that when Petitioner realized he had missed he continued advancing at Dean but Dean was able to successfully escape. This is sufficient evidence from which the jury could reasonably infer that Petitioner had, without provocation, deliberately formed the intent to kill Dean.

There is sufficient evidence in the record from which a rational jury could have inferred that Petitioner in shooting at Dean attempted to kill him with premeditation. Petitioner is not entitled to relief under the sixth ground. Since there was sufficient evidence to convict, it

follows, *a fortiori*, that Petitioner was not improperly charged and he is not entitled to relief under the seventh ground.

Ground 8 (Ineffective assistance of counsel).  Petitioner presented this issue in his petitions for a writ of habeas corpus to the Sacramento Superior Court, the California Court of Appeal, and the California Supreme Court in his fourth petition filed with that Court.

Petitioner argues that his appellate counsel was ineffective in that she: (1) did not raise all the appropriate issues during the appeal process; (2) abandoned him during the pendency of the direct appeal; and (3) failed to investigate all the facts underlying this petition for habeas relief and file a habeas petition for him.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*.  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

In denying his petition, the Sacramento Superior Court found that Petitioner was too vague in the issues he expected appellate counsel to raise to state a cause of action, citing *People v. Duvall* (1995) 9 Cal.4th 464, 474.[15]  That Court, assuming Petitioner meant the arguments presented in the petition, held, without giving reasons, that the petition presented no grounds for relief.  In addressing the ineffective counsel claim as to the insufficiency of the evidence, the Sacramento Superior Court held that the testimony of the witnesses and the evidence showing gunshot damage to the car supported a verdict that Petitioner shot at a person and a car.  It further held that "malice aforethought" may be established by implication, evidence that

---

[15] "The petition should both (i) state fully and with particularity the facts on which relief is sought, as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing." (Internal citations and quotation marks omitted.)

Petitioner intentionally did an act without considerable provocation and that it was not necessary for Petitioner to have reflected on the gravity of his actions.  Consequently, appellate counsel could not be ineffective for failing to raise that point.

Although Petitioner claims appellate counsel abandoned him during the direct appeal, he does not provide any factual basis for this conclusory statement nor does abandonment appear from the record.  The record reflects that appellate counsel represented him throughout the direct appeal process, including the filing of a petition for review in the California Supreme Court.  As in his petitions to the California courts, Petitioner has not identified in his petition before this Court the issues that appellate counsel should have raised on appeal but did not.  As did the Sacramento Superior Court, this Court assumes that the issues are those raised in the habeas proceedings.  Inasmuch, as did the Sacramento Superior Court, this Court has determined that those issues are without merit, the failure of appellate counsel to raise them did not constitute ineffective assistance of counsel.  *See Jones v. Barnes*, 463 U.S. 745, 751–52 (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir.1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

Finally, to the extent that Petitioner's claim is predicated upon the failure of appellate counsel to assist him in preparing his habeas petitions, since Petitioner has no constitutional right to counsel in state post-conviction proceedings, he cannot claim constitutionally ineffective assistance of appellate counsel in connection with such proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991).

Petitioner is not entitled to relief under his eighth ground.

Accordingly, because Petitioner is not entitled to relief under any claim asserted,

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

MEMORANDUM DECISION
*Jackson v. Scribner*, 2:03-cv-01275-JKS                15

encouragement to proceed further" (internal quotation marks omitted)).  To the extent federal constitutional issues were raised before the California Court of Appeal on direct appeal or addressed or deemed addressed on the merits by the California Courts in denying Petitioner's petitions for habeas relief before those courts, no reasonable jurist could find that the decisions were "objectively unreasonable."

    The Clerk of the Court shall enter final judgment accordingly.

    Dated:  May 25, 2007.

s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge